IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> PLAINTIFF, <br><br> v. <br><br> MICHAEL L. HUDSON, an individual, <br><br> DEFENDANT. | COMPLAINT <br><br> Case No.: 1:17-cv-520 <br><br> Judge: |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against Defendant Michael L. Hudson ("Hudson" or "Defendant") alleges as follows:

## INTRODUCTION

1. This matter involves an egregious fraud committed by Hudson while acting as assistant treasurer of Frisch's Restaurants, Inc., ("Frisch's"). For a period of more than six years, Hudson carried out a scheme to defraud by misappropriating over $3.9 million of Frisch's funds through diverting payroll funds to accounts he controlled and by falsifying Frisch's accounting records to conceal his defalcation. Hudson submitted the falsified records to Frisch's auditors in connection with the preparation and filing of the company's financial statements. Hudson also falsely certified to Frisch's chief financial officer ("CFO") that the company's internal controls for which he was responsible were effective.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v] and Sections 21 and

Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa].

3. Defendant, directly and indirectly, singly and in concert, has made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the Southern District of Ohio.

4. Venue for this action is proper in the Southern District of Ohio under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and under Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because Defendant resided in and transacted business in this district.

5. Defendant, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and course of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

6. Defendant's conduct took place in connection with the purchase or sale of shares of Frisch's stock.

## DEFENDANT

7. **Michael L. Hudson**, age 54, was a resident of Cincinnati, Ohio at the time of the conduct alleged in this case. Hudson currently resides in a federal penitentiary. During the relevant period, Hudson worked for Frisch's as assistant treasurer.

## THE COMPANY

8. **Frisch's Restaurants, Inc.,** is an Ohio corporation that operates family-style restaurants in the regions of Ohio, Kentucky and Indiana. Frisch's was registered and filed

periodic reports with the Commission and its stock was listed on NYSE MKT LLC. On August 24, 2015, Frisch's was acquired by a private equity fund and was delisted from NYSE MKT LLC on August 25, 2015. Thereafter, Frisch's terminated its registration with the Commission on September 4, 2015.

## STATEMENT OF FACTS

### BACKGROUND

9. Hudson began his employment with Frisch's in about 1982, being hired on as a cook. Hudson was thereafter promoted to Frisch's treasury department, working in the cash receipts department.

10. In 2004, Hudson was promoted at Frisch's to the position of assistant treasurer and was designated as an "officer" of the company. Hudson held that position until he resigned on December 17, 2014. As assistant treasurer, Hudson served as the head of Frisch's treasury department, and supervisors in the treasury department reported to him. Hudson reported directly to Frisch's CFO.

11. Hudson's primary duties as Frisch's assistant treasurer related to supervising the cash receipts and disbursements function of the company, which were significant to the company's treasury and accounting functions. Hudson was also responsible for the recording of accounting entries related to this activity and for period-end account balances and reconciliations.

12. At the end of fiscal periods, Hudson was responsible for closing and reconciling Frisch's treasury department books.

13. Among Hudson's responsibilities in reporting to Frisch's CFO, Hudson was required to certify at the end of each accounting period to Frisch's CFO that, among other things,

3

the internal controls over which he had responsibility "were effectively designed" and "there were no known significant deficiencies or material weaknesses over [Frisch's] financial reporting or financial disclosures."

14. In the fall of 2014, Frisch's internal audit group began a detailed audit of the reconciliation process of certain accounts Hudson had difficulty closing for the 2014 fiscal year ending June 3, 2014.

15. In anticipation of the December 16, 2015 close for Frisch's 2015 second quarter, Frisch's CFO scheduled a meeting among himself, Hudson, and Frisch's Director of Audit, to discuss, among other things, the reconciliation process of closing the second quarter books related to accounts Hudson previously had difficulty reconciling.

16. Leading up to that meeting, Hudson was unable to reconcile and close the treasury department books, and shortly before the meeting Hudson sent Frisch's CFO an email stating: "I take full responsibility an[d] apologize for the errors on the gift card liability. . . . I am resigning from Frisch's effective today." Hudson abruptly left the office and never returned.

17. In response to Hudson's conduct, Frisch's Director of Audit undertook a review of the treasury accounting records and discovered that Hudson had been altering Frisch's payroll files to divert funds in excess of his authorized salary into bank accounts he controlled.

**FRISCH'S INTERNAL INVESTIGATION**

18. Frisch's CFO, CEO and audit committee were informed of the Director of Audit's findings and Frisch's audit committee retained outside counsel to conduct an internal investigation to discover the extent of Hudson's conduct.

19. As a result of its internal investigation, Frisch's discovered that, for the years 2008 through 2014, Hudson had misappropriated at least $3,905,221.50 of Frisch's funds through falsifying Frisch's payroll and accounting records.

20. During the internal investigation, Hudson admitted to misappropriating Frisch's funds during his tenure as assistant treasurer.

## HUDSON'S SCHEME TO DEFRAUD

21. Hudson misappropriated Frisch's funds by causing Frisch's bank to deposit payroll funds into bank accounts Hudson controlled in amounts that exceeded his salary.

22. Hudson carried out his scheme by, among other things, circumventing Frisch's internal controls, intercepting Frisch's payroll processing system and altering the payroll files to cause Frisch's bank to deposit excessive funds into the accounts Hudson controlled. Hudson then falsely informed Frisch's payroll department that the payroll files were processed as originally instructed by the payroll department.

23. Hudson's alteration of Frisch's payroll data files resulted in Frisch's cash disbursement accounting entries reflecting lower compensation expense than actual cash disbursements. To conceal the understated compensation expense, among other things, Hudson falsified Frisch's accounting books and records, including various receivable and liability accounts, to alter account balances and falsely reconcile the books and records.

24. In carrying out his scheme to defraud, Hudson falsified a large number of accounting books and records and used and made false statements, misrepresentations and omissions to Frisch's CFO, its internal accountants and independent auditors, all of which were in connection with the audits and reviews of Frisch's financial statements.

## HUDSON FALSELY REPORTED TO FRISCH'S MANAGEMENT REGARDING THE EFFECTIVENESS OF ITS INTERNAL CONTROLS

25.     Hudson's duties as assistant treasurer included the evaluation and execution of internal controls related to the treasury department's function of processing cash receipts and disbursements.  Among other things, Hudson's staff was responsible for disbursing funds in compliance with company policies and procedures.

26.     Hudson's role was to ensure that Frisch's policies and procedures over which he was responsible were properly followed and to certify to Frisch's CFO at the end of the reporting period that, among other things, he had reviewed all internal control documentation related to his responsibilities, that he believed the controls were effectively designed and were in operation at the date of the certification, and that there were no known significant deficiencies or material weaknesses over financial reporting or financial disclosures as of the date of his certification.

27.     In fact, at least during 2008 through 2014, Hudson had exploited significant deficiencies and material weaknesses in those internal controls and circumvented those controls to carry out his scheme to defraud, and then falsely certified to Frisch's CFO that he believed the controls were effectively designed and there were no known significant deficiencies or material weaknesses over financial reporting or financial disclosures.

28.     In its response to the findings of the internal investigation, Frisch's performed an analysis of its internal control over financial reporting and disclosed in its Form 10-Q filed with the Commission on March 13, 2015 the relevant material weaknesses.

29.     Hudson's false statements to Frisch's management that he believed the internal controls over which he was responsible were effectively designed and were in operation at the date of the certification, and that there were no known significant deficiencies or material

weaknesses over financial reporting or financial disclosures as of the date of the certification, were incorporated into management's assessment of the effectiveness of Frisch's internal control over financial reporting.

30. As a result of Hudson's misrepresentations in his certification to Frisch's CFO regarding those internal controls, Frisch's Forms 10-K filed with the Commission for the fiscal years 2008 through 2014 failed to disclose, among other things, certain material weaknesses in Frisch's internal control over financial reporting.

### HUDSON'S ADMISSIONS AND GUILTY PLEA

31. On November 20, 2015, a criminal information was filed against Hudson by the U. S. Attorney's Office for the Southern District of Ohio charging one count of violating 18 U.S.C. § 1343, wire fraud, and one count of violating 18 U.S.C. § 7206(1), filing a false tax return, based on some of the conduct described in this Complaint. On September 22, 2016, Hudson pled guilty to both counts and was sentenced to sixty months in prison, three years of supervised release, and was ordered to pay restitution in the amount of $3,099,305.49 to Frisch's and $505,000 to Traveler's Insurance, and $969,697.81 to the Internal Revenue Service.

### FIRST CAUSE OF ACTION
### EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c)]**

32. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 31, above.

33. Defendant, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, with scienter, (1) employed devices, schemes,

7

or artifices to defraud; or (2) engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

34. By reason of the foregoing, Defendant, violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5].

## SECOND CAUSE OF ACTION
## FALSIFICATION OF BOOKS, RECORDS OR ACCOUNTS
### Violations of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)]

35. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 34, above.

36. Defendant, by engaging in the conduct described above, directly or indirectly, knowingly circumvented and knowingly failed to implement a system of internal accounting controls and knowingly falsified Frisch's books, records and accounts.

37. By reason of the foregoing, Defendant, violated, and unless restrained and enjoined will continue to violate, Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

## THIRD CAUSE OF ACTION
## FALSIFICATION OF ACCOUNTING RECORDS
### Violations of Rule 13b2-1 [17 C.F.R. § 240.13b2-1]

38. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

39. Defendant, by engaging in the conduct described above, directly or indirectly, falsified and caused to be falsified Frisch's books, records, and accounts.

40.     By reason of the foregoing, Defendant, violated, and unless restrained and enjoined will continue to violate, Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

### FOURTH CAUSE OF ACTION
### DECEIT OF AUDITORS
### Violations of Rule 13b2-2 [17 C.F.R. § 240.13b2-2]

41.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40, above.

42.     Defendant, by engaging in the conduct described above, directly or indirectly, made or caused to be made materially false or misleading statements, or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with audits, reviews or examinations of Frisch's financial statements or in the preparation or filing of Frisch's documents or reports required to be filed with the Commission.

43.     By reason of the foregoing, Defendant, violated, and unless restrained and enjoined will continue to violate, Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

### FIFTH CAUSE OF ACTION
### AIDING AND ABETTING FALSE FILINGS WITH THE COMMISSION
### Violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 [17 C.F.R. §§ 240.12b-20 and 240.13a-1]

44.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 43, above.

45. Defendant, by engaging in the conduct described above, directly or indirectly, aided and abetted Frisch's materially false and misleading annual reports filed with the Commission.

46. Defendant knew of Frisch's violations of Section 13(a) [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1] and substantially assisted Frisch's in committing these violations.

47. By reason of the foregoing, Defendant, violated, and unless restrained and enjoined will continue to violate, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

### FIFTH CAUSE OF ACTION
### AIDING AND ABETTING FALSE BOOKS AND RECORDS
**Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]**

48. The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 47, above.

49. Defendant, by engaging in the conduct described above, directly or indirectly, aided and abetted Frisch's failure: (1) to make and keep books, records, and accounts, which in reasonable detail, accurately and fairly reflected the company's transactions, and dispositions of its assets; and (2) to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that the transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and any other criteria applicable to such statements.

50. Defendant knew of Frisch's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)] and substantially assisted Frisch's in committing these violations.

51. By reason of the foregoing, Defendant, violated, and unless restrained and enjoined will continue to violate, Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I

Issue findings of fact and conclusions of law that Defendant committed the violations charged herein.

### II

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that permanently enjoin Michael L. Hudson and his officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and 240.10b-5(c)], Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)], Rule 13b2-1 [17 C.F.R. § 240.13b2-1] thereunder, Rule 13b2-2 [17 C.F.R. § 240.13b2-2] thereunder, and from aiding and abetting violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 [17 C.F.R. §§ 240.12b-20 and 240.13a-1] thereunder, and Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

**III**

Enter an order directing Defendant to disgorge all ill-gotten gains he received from his illegal conduct alleged in this complaint and deem the order satisfied based on criminal restitution imposed in the related criminal matter.

**IV**

Enter an order barring Defendant from serving as an officer or director of any issuer required to file reports with the Commission under Section 12 or Section 15 of the Exchange Act [15 U.S.C. § 78(1) and 78(o)].

**V**

Grant such further equitable relief as this Court deems just, appropriate, and necessary.

**VI**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated: August 4, 2017.

Respectfully submitted,

/s/ Amy J. Oliver
Amy J. Oliver (Utah Bar No. 8785)
olivera@sec.gov
Daniel Wadley (Utah State Bar No. 10358)
wadleyd@sec.gov
William B. McKean (Utah Bar No. 4883)
mckeanw@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101
Tel:  801-524-5796